1  BECK & LEE TRIAL LAWYERS
2  JARED H. BECK (233743)
   ELIZABETH LEE BECK (233742)
3  Corporate Park at Kendall
4  12485 SW 137th Ave., Suite 205
   Miami, Florida 33186
5  Telephone:   (305) 234-2060
   Facsimile:    (786) 664-3334
6  jared@beckandlee.com
7  elizabeth@beckandlee.com

8  ANTONINO G. HERNANDEZ P.A.
9  ANTONINO G. HERNANDEZ, ESQ.
   4 SE 1st Street, 2nd Floor
10 Miami, Florida 33131
11 Telephone:   (305) 282 3698
   Facsimile:    (786) 513 7748
12 Hern8491@bellsouth.net

13
14 Counsel for Plaintiff and the Proposed Class

15        UNITED STATES DISTRICT COURT

16        CENTRAL DISTRICT OF CALIFORNIA

17
18             WESTERN DIVISION

19
20 | | |
   |---|---|
   | NICOLAS TORRENT, on Behalf of Himself and All Others Similarly Situated, | Case No: |
   | | Pleading Type: Class Action |
   | Plaintiff, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
   | vs. | |
   | YAKULT U.S.A. INC., | |
   | Defendant. | |

Plaintiff, Nicolas Torrent ("Plaintiff"), through his undersigned attorneys, upon personal knowledge as to his own acts, and on information and belief as to all others based upon his own and his attorneys' investigation, alleges as follows:

## NATURE OF THE ACTION

1.      Defendant, Yakult U.S.A. Inc. ( "Defendant") manufactures, markets, distributes, and sell probiotic beverages called Yakult and Yakult Light (collectively, "Yakult") which contain a live microorganism named *Lactobacillus casei* Shirota.  Defendant claims this probiotic culture is beneficial to human health and helps balance the digestive system.  These claims are contrary to the weight of scientific evidence.  Plaintiff and members of the proposed class were injured when they bought Yakult in reliance on these false and misleading claims.  As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendant's Yakult (the "Class").  Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in California of Defendant's Yakult (the "California Class").

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and there is diversity of citizenship between the proposed class members and Defendant.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendant reside in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of Yakult in this District; and (2) is subject to personal jurisdiction in this District.

1

**PARTIES**

4.      Defendant Yakult U.S.A. Inc. is a Delaware corporation with its principal place of business located at 17235 Newhope St. Fountain Valley, California 92708.

5.      Defendant manufactures, markets, distributes, and sells Yakult in the United States, and have done so throughout the Class Period as defined herein.

6.      Plaintiff is a resident of Los Angeles, California.  He purchased Yakult during the class period (as defined herein) in reliance on Defendant's false and misleading packaging and advertising claims, as described further herein.

**FACTUAL ALLEGATIONS**

7.      This class action concerns the probiotic drink Yakult, the packaging of which is depicted below.



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

8.      Yakult was originally introduced in Japan in 1935.  Its name derives from the word for yogurt in the Esperanto language.  Today, according to Defendants' website (www.yakultusa.com), Yakult is the world's leading probiotic beverage.

9.      Probiotics are live microorganisms claimed to be beneficial to the host organism.  According to the Food and Agriculture Organization of the United Nations (FAO) and World Health Organization (WHO), probiotics are defined as: "Live microorganisms which when administered in adequate amounts confer a health benefit on the host."[1]

_____

[1]      Report of a Joint FAO/WHO Expert Consultation on Evaluation of Health and Nutritional Properties of Probiotics in Food Including Powder Milk with Live Lactic Acid Bacteria (October 2001).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

10.    The product's packaging states that "each bottle of Yakult contains around 8 billion live and active beneficial cultures called *Lactobacillus casei* Shirota."

11.    According to Defendant's website, *Lactobacillus casei* Shirota is a probiotic strain first cultured in the 1930s by microbiologist Dr. Minura Shirota at the Medical School of Kyoto University.  The strain was named in his honor, and Dr. Shirota went on to incorporate it into a drink for the Japanese market, which became Yakult.

12.    Today, Yakult is sold in 31 countries, although the bacteria cultures are provided from a mother strain from Japan regardless of where the product is ultimately manufactured or distributed.

13.    Yakult first entered the United States market in 1999 on the shelves of Asian grocery stores.

14.    In 2007, Yakult first became available for sale in general market grocery stores in the United States.

15.    The marketing of Yakult in the United States places heavy emphasis on the health benefits of *Lactobacillus casei* Shirota.  For example, the packaging prominently encourages consumers that, "[d]rinking one or two bottles daily" can "balance your digestive system and maintain overall health."

16.    Defendant's website oriented to the United States market contains numerous statements touting the product's health benefits, such as:

How does Yakult work?

Yakult is a probiotic; it contains billions of live and active "good bacteria." Your digestive system naturally contains trillions of all kinds of bacteria -- some are helpful, some are harmful. When you drink Yakult daily, it makes it difficult for the bad bacteria to take

4

over. Yakult also gives you more of the good bacteria that may help balance your digestive system.

(http://www.yakultusa.com//#faq)

Why drink Yakult?

You may not think about your digestive system when you think about your overall well-being, but that's where good health and proper nutrition begins. Drinking Yakult daily may help balance your digestive system. For 75 years, people around the world have been making Yakult a part of their daily diet – now you can, too!

On top of all the benefits Yakult tastes great! Over 28 million children and adults around the world enjoy the delicious citrus taste of Yakult every day.

(http://www.yakultusa.com/#faq)

17.    Yakult is also advertised on television.  One ad depicts individuals of varying ages enjoying the drink while the narrator intones, "With the exclusive probiotic *Lactobacillus casei* Shirota, Yakult may help balance your digestive system and support overall health.  Yakult.  Good health begins inside."

18.    Another ad shows a family of four drinking Yakult together in the kitchen.  The narrator states:

Today's busy and stressful lifestyle, irregular diet, and aging can lead to an unbalanced digestive system.  That's why there's Yakult, the delicious probiotic drink that packs good things into a small package. Created over 70 years ago, Yakult's exclusive *Lactobacillus casei* Shirota helps maintain the balance of your digestive system.  Millions

of families around the world enjoy the benefits of drinking Yakult every day, and now you can too.  Introducing Yakult.  Every Day. For Every Body.

19.     Another ad is a whimsical animation depicting the invention and distribution of Yakult around the world, as the narrator states:

Once upon a time a microbiologist named Dr. Shirota shared his discovery with the world.  It was a unique strain of probiotic bacteria named *Lactobacillus casei* Shirota which he used to create Yakult in support of good health.  Now millions of families, from East to West, balance their digestive systems with Yakult.  Here's to you, Dr. Shirota!

20.     Defendant's advertising claims about Yakult are and have been the subject of an extensive and comprehensive, nationwide marketing campaign from 2007 to the present and continuing.

21.     Yakult is sold in packs of five bottles, each holding 2.7 ounces of product.  A five-pack typically retails for approximately $3.60.

22.     Defendant's emphasis on Yakult's purported health benefits has enabled them to command a substantial premium in comparison to competing yogurt drinks that do not contain probiotics, or the *Lactobacillus casei* Shirota strain.

23.     Defendant's labeling and advertising claims are false and deceptive because they imply that Yakult is healthier than other, less costly beverages that do not contain probiotics or the *Lactobacillus casei* Shirota strain, and because they imply that Yakult makes a more significant contribution to digestive health than it actually does.

24.     There is no credible scientific evidence that the probiotics in Yakult do anything to promote digestive health or human health more generally.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

25.     For example, in 2010 a scientific panel of the European Food Safety Authority (EFSA) published an opinion on the health benefits of *Lactobacillus casei* Shirota.  The EFSA panel concluded based on the available evidence that, contrary to claims advanced by one of Yakult Honsha's European subsidiaries, "a cause and effect relationship has not been established" between consumption of the probiotic and maintenance of immune defenses.[2]

26.     In a separate study, the EFSA also concluded that general claims regarding probiotics' salutary effect on the immune system and digestive health lack sound scientific basis.  As the United Kingdom-based newspaper *The Guardian* reported, the EFSA concluded that the evidence submitted by the probiotics industry "to support its claims that various food additives could strengthen the body's defences, improve immune function and reduce gut problems were either so general as to be inadmissible, or could not be shown to have the claimed effect."[3]

27.     In September 2014, scientists at the University College of London published the results of an experiment examining the effects of commercially available probiotic products.  The study found that the bacteria contained in Yakult failed to withstand the stomach's acidic environment or flourish in the small intestine.[4]  These findings run directly contrary to Defendant's health claims.

---

[2]     *See* Scientific Opinion on the substantiation of a health claim related to Lactobacillus casei Shirota and maintenance of the upper respiratory tract defense against pathogens by maintaining immune defences pursuant to Article 13(5) of Regulation (EC) No 1924/2006, EFSA Journal 2010;8(10): 1860.

[3] *See* Probiotic health claims ruled unproven, The Guardian (UK), (Oct. 19, 2010) (http://www.guardian.co.uk/society/2010/oct/19/efsa-rules-probiotic-health-claims-unproven).

[4]     *See* Probiotic drinks "don't do any good": Study finds "good " bacteria in many products does not even reach the small intestine, Daily Mail, (Sept. 11, 2014) (http://www.dailymail.co.uk/health/article-2752798/The-probiotic-drinks-don-t-bring-benefits-Study-finds-good-bacteria-products-does-not-reach-small-intestine.html)

28.     During the Class Period, Plaintiff purchased Yakult multiple times, with his last purchase occurring in October 2014 at Ralphs, 910 Lincoln Boulevard, Venice, California.  Prior to purchasing the Product, Plaintiff read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Yakult packaging.  For each purchase, he understood he was paying for a probiotic beverage bringing benefits to his digestive system as well as overall health.  During the Class Period, Plaintiff also viewed and relied on Yakult television commercials, which represented Yakult as a probiotic health drink. But for Defendant's misrepresentations, Plaintiff would not have purchased Yakult, and/or would not have paid a premium for Yakult over the price of other beverages that are not promoted as improving health.  Plaintiff thus was damaged by Defendant's practice.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and the following Class in accordance with Rule 23 of the Federal Rules of Civil Procedure.

All persons in the United States who purchased Yakult from its introduction in January 1, 2007 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes.  Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant.  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

30.     Plaintiff also brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of California and on behalf of all persons located within the states with similar consumer protection laws, breach of express warranty laws and breach of implied warranty laws.

31.     The Classes defined above are individually so numerous that joinder of all members is impracticable. While the exact number of members of the Classes is unknown to Plaintiff at this time, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that there are thousands of members in the Classes.  Class Members are geographically dispersed throughout the United States.

32.     Questions of law and fact common to the Classes include, but are not limited to:

   a.   Whether Defendant conveyed a class-wide message that Yakult is beneficial to the digestive system, and/or a class-wide message that Yakult promotes general human health;

   b.   If so, whether Defendant's claims and messages were material to a reasonable consumer;

   c.   If so, whether Defendant's claims and messages were false (for example, whether Defendant's claims were scientifically substantiated), or, if not literally false, whether Defendant's claims were likely to deceive the public;

   d.   Whether Defendant omitted any material information in making the challenged claims; and

   e.   The proper method and measure of the Class's damages.

33.     Common questions of law and fact exist as to all Class Members and predominate over any questions affecting solely individual Class Members.

9

34.     Plaintiff's claims are typical of the claims of the Class, and she will fairly and adequately represent the interests of the Class.  Plaintiff has retained counsel experienced with class action litigation and neither she nor her counsel have any conflicts with or interests adverse or antagonistic to the interests of the Class.

35.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the Class Members is impracticable.  The prosecution of separate actions by individual Class Members would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to all of the Class Members.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.  There will be no material difficulty in the management of this action as a class action on behalf of the Class Members.

## FIRST CLAIM FOR RELIEF

*Violations of the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. (Unlawful)*

36.     Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

37.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

38.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that  Defendant's conduct violates the Consumer Legal Remedies Act, and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), which incorporates all the regulations and requirements of the Federal Food, Drug,

and Cosmetic Act.  Specifically, Defendant acted in contravention of the following Sherman Law provisions:

- § 110100 (adopting all FDA regulations as state regulations);
- § 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");
- § 110390 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");
- § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");
- § 110400 ("it is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for deliver any such food . . . . ");
- § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.");
- § 110670 ("Any food is misbranded if its labeling does not confirm with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.");
- § 110680 ("Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");
- § 110705 ("Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling and in

11

terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.");

- § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.");

- § 110765 ("It is unlawful for any person to misbrand any food."); and

- § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.").

39. By violating the California Unfair Competition Law, Defendant also violated the common law of unfair competition.

40. Defendant leveraged their deception to induce Plaintiff and members of the Classes to buy products that were of lesser value and quality than advertised.

41. Plaintiff suffered injury and fact and lost money or property as a result of Defendant's deceptive advertising: she was denied the benefit of the bargain in purchasing Yakult. Had Plaintiff been aware of Defendant's false and misleading advertising tactics, she would have been willing to pay less than she did for Yakult, or not purchase it at all. Moreover, had Defendant not engaged in the false and misleading advertising tactics, Plaintiff and the members of the Class would have paid less for Yakult because Defendant would not have been able to charge a premium for the produce.

42. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

43. Plaintiff also seeks an order for the restitution of all monies from the sale of Yakult which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

**SECOND CLAIM FOR RELIEF**

*Violations of the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. (Unfair and Fraudulent)*

44. Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

45. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

46. The false and misleading labeling and advertising of Yakult, as alleged herein, constitutes 'unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

47. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices because Defendant's conduct is false and misleading to Plaintiff, Class members, and the general public.

48. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant  from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

49. Plaintiff also seeks an order for the restitution of all monies from the sale of Yakult which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

**THIRD CLAIM FOR RELIEF**

*Violation of the California False Advertising Law, Bus. & Prof. Code §§ 17500 et seq.*

50. Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

51.    In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Yakult under the false belief that Yakult is beneficial to the digestive system and human health more generally.

52.    Defendant  knew and reasonably should have known that its advertising of Yakult was untrue and/or misleading.

53.    As a result, Plaintiff, the Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM FOR RELIEF

### *Violation of Consumer Legal Remedies Act, Civ. Code §§ 1750, et seq.*

54.    Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

55.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

56.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;
- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;
- § 1770(a)(9): advertising goods with intent not to sell them as advertised;

- **§ 1770(a)(6)**: representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

57.     As a result, Plaintiff and the Class members have suffered irreparable harm and are entitled to injunctive relief pursuant to Cal. Civ. Code § 1782(d).

58.     Defendant's conduct described herein was longstanding, was done for profit as a deliberate corporate policy rather than an isolated incident, and was morally wrong, fraudulent, callous, and oppressive.

## FIFTH  CLAIM FOR RELIEF

*Unjust Enrichment on Behalf of the Class, or in the Alternative, on Behalf of the California Class*

59.     Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

60.     Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class, under California law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

61.     In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

62.     At all times relevant hereto, Defendant deceptively labeled, marketed, advertised, and sold Yakult to Plaintiff and the Class.

63.     Plaintiff and members of the Class conferred upon Defendant non-gratuitous payments for Yakult that they would not have due to Defendant's deceptive labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

64.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of Yakult by Plaintiff and members of the Class, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that Yakult has certain health benefits, when in fact they are not, which caused injuries to Plaintiff and members of the Class because they paid a price premium due to the mislabeling of Yakult

65.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**SIXTH CLAIM FOR RELIEF**

*Plaintiff, on Behalf of Himself, the California Class and Classes in the States with Similar Laws, Alleging Breach of Express Warranty*

66.     Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

67.     Plaintiff brings this Count individually under the laws of the state where he purchased Yakult and on behalf of:  (a) all other persons who purchased

Yakult in the same State; and (b) all other persons who purchased Yakult in States having similar laws regarding express warranty.

68. Defendant's representations, as described herein, are affirmations by Defendant that Yakult is a probiotic beverage with certain health benefits. Defendant's representations regarding Yakult are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of the goods. Those promises constituted express warranties and became part of the basis of the bargain, between Defendant on the one hand, and Plaintiff and the Classes on the other.

69. In addition, or in the alternative, Defendant made each of its above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendant's representations as a material factor in their decisions to purchase Yakult. Plaintiff and other members of the Classes would not have purchased Yakult but for these representations and warranties.

70. Yakult did not, in fact, meet the representations Defendant made about Yakult, as described herein.

71. At all times relevant to this action, Defendant falsely represented that Yakult was a yogurt beverage with certain health benefits, when in fact it did not have such health benefits.

72. At all times relevant to this action, Defendant made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a. Alaska St. §45.02.313;

b. Ariz. Rev. Stat. Ann. §47-2313;

c. Ark. Code Ann. §4-2-313;

d. Cal. Com. Code §2313;

e.   Colo. Rev. Stat. §4-2-313;

f.   Conn. Gen. Stat. Ann. §42a-2-313;

g.   D.C. Code §28:2-313;

h.   Fla. Stat. §672.313;

i.   Haw. Rev. Stat. §490:2-313;

j.   810 Ill. Comp. Stat. 5/2-313;

k.   Ind. Code §26-1-2-313;

l.   Kan. Stat. Ann. §84-2-313;

m.   La. Civ. Code. Ann. art. 2520;

n.   Maine Rev. Stat. Ann. 11 §2-313;

o.   Mass. Gen. Laws Ann. 106 §2-313;

p.   Minn. Stat. Ann. §336.2-313;

q.   Miss. Code Ann. §75-2-313;

r.   Mo. Rev. Stat. §400.2-313;

s.   Mont. Code Ann. §30-2-313;

t.   Neb. Rev. Stat. §2-313;

u.   Nev. Rev. Stat. §104.2313;

v.   N.H. Rev. Stat. Ann. §382-A:2-313;

w.   N.J. Stat. Ann. §12A:2-313;

x.   N.M. Stat. Ann. §55-2-313;

y.   N.Y. U.C.C. Law §2-313;

z.   N.C. Gen. Stat. Ann. §25-2-313;

aa.   Okla. Stat. Ann. tit. 12A, §2-313;

bb.   Or. Rev. Stat. §72.3130;

cc.   Pa. Stat. Ann. tit. 13, §2313;

dd.   R.I. Gen. Laws §6A-2-313;

ee.   S.C. Code Ann. §36-2-313;

ff.   S.D. Codified Laws. §57A-2-313;

gg.   Tenn. Code Ann. §47-2-313;

hh.   Tex. Bus. & Com. Code Ann. §2.313;

ii.   Utah Code Ann. §70A-2-313;

jj.   Vt. Stat. Ann. tit. 9A§2-313;

kk.   Wash. Rev. Code §62A.2-313;

ll.   W. Va. Code §46-2-313;

mm.   Wyo. Stat. Ann. §34.1-2-313;

73.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

74.   As a proximate result of this breach of warranty by Defendant, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because:  (a) they paid a price premium due to the deceptive labeling of Yakult; and (b) Yakult did not have the attributes, characteristics, nutritional value, health qualities, or value promised.

75.   Wherefore, Plaintiff and the Classes demand judgment against Defendant for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

## SEVENTH CLAIM FOR RELIEF

***Plaintiff, on Behalf of Himself, the California Class, and Classes in the States with Similar Laws, Alleging Breach of Implied Warranty***

76.   Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

77.   Plaintiff brings this Count individually under the laws of the state where he purchased Yakult and on behalf of:  (a) all other persons who purchased

Yakult in the same State; and (b) all other persons who purchased Yakult in States having similar laws regarding implied warranties.

78.     The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

79.     Defendant developed, manufactured, advertised, marketed, sold, and/or distributed Yakult and represented that Yakult was fit for a particular use, specifically that the Product could be used as probiotic beverage with certain health benefits.  Contrary to such representations, Defendant failed to disclose that Yakult does not benefit the digestive system or human health more generally.

80.     At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

a.     Ala. Code §7-2-314;

b.     Alaska Stat. §45.02.314;

c.     Ariz. Rev. Stat. Ann. §47-2314;

d.     Ark. Code Ann. §4-2-314;

e.     Cal. Com. Code §2314;

f.     Colo. Rev. Stat. §4-2-314;

g.     Conn. Gen. Stat. Ann. §42a-2-314;

h.     Del. Code Ann. tit. 6 §2-314;

i.     D.C. Code §28:2-314;

j.     Fla. Stat. §672.314;

k.     Ga. Code Ann. §11-2-314;

l.     Haw. Rev. Stat. §490:2-314;

m.     Idaho Code §28-2-314;

| | | |
|---|---|---|
| 1 | n. | 810 Ill. Comp. Stat. Ann. 5/2-314; |
| 2 | o. | Ind. Code Ann. §26-1-2-314; |
| 3 | p. | Iowa Code Ann. §554.2314; |
| 4 | q. | Kan. Stat. Ann. §84-2-314; |
| 5 | r. | Ky. Rev. Stat. Ann. §355.2-314; |
| 6 | s. | La. Civ. Code Ann. art. §2520; |
| 7 | t. | Me. Rev. Stat. Ann. 11 §2-314; |
| 8 | u. | Md. Code Ann. Com. Law §2-314; |
| 9 | v. | Mass. Gen. Laws Ch. 106 §2-314; |
| 10 | w. | Mich. Comp. Laws Ann. §440.2314; |
| 11 | x. | Minn. Stat. Ann. §336.2-314; |
| 12 | y. | Miss. Code Ann. §75-2-314; |
| 13 | z. | Mo. Rev. Stat. §400.2-314; |
| 14 | aa. | Mont. Code Ann. §30-2-314; |
| 15 | bb. | Nev. Rev. Stat. §104.2314; |
| 16 | cc. | N.H. Rev. Stat. Ann. §382-A:2-314; |
| 17 | dd. | N.J. Stat. Ann. §12A:2-314; |
| 18 | ee. | N.M. Stat. Ann. §55-2-314; |
| 19 | ff. | N.Y. U.C.C. Law §2-314; |
| 20 | gg. | N.C. Gen. Stat. Ann. §25-2-314; |
| 21 | hh. | N.D. Cent. Code §41-02-314; |
| 22 | ii. | Ohio Rev. Code Ann. §1302.27; |
| 23 | jj. | Okla. Stat. Ann. tit. 12A §2-314; |
| 24 | kk. | Or. Rev. Stat. §72.3140; |
| 25 | ll. | Pa. Stat. Ann. tit. 13 §2314; |
| 26 | mm. | R.I. Gen. Laws §6A-2-314; |
| 27 | nn. | S.C. Code Ann. §36-2-314; |
| 28 | oo. | S.D. Codified Laws §57A-2-314; |

21

pp.     Tenn. Code Ann. §47-2-314;

qq.     Tex. Bus. & Com. Code Ann. §2-314;

rr.     Utah Code Ann. §70A-2-314;

ss.     Va. Code Ann. §8.2-314;

tt.     Vt. Stat. Ann. tit. 9A §2-314;

uu.     W. Va. Code §46-2-314;

vv.     Wash. Rev. Code §62A 2-314;

ww.     Wis. Stat. Ann. §402.314; and

xx.     Wyo. Stat. Ann. §34.1-2-314.

81.     As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of sweetening products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

82.     Further, Defendant is a merchant with respect to Yakult. Defendant developed, manufactured, produced, advertised, marketed, sold, and/or distributed Yakult and represented to Plaintiff and the Classes that it developed Yakult as a probiotic beverage providing certain health benefits. Further, Defendant, by selling Yakult to Plaintiff and the Classes has held itself out as a retailer of the product and, in fact, has derived a substantial amount of revenues from the sale of the product.

83.     Yakult can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

84.     As a merchant of Yakult, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a probiotic beverage providing certain health benefits, as promised.

85.     Defendant developed, manufactured, produced, sold, and distributed Yakult to consumers such as Plaintiff and the Classes. It knew that the product would be used as a probiotic beverage providing certain health benefits.

86.     Defendant specifically represented in its labeling of the product that it is a probiotic beverage providing certain health benefits, as described herein.

87.     At the time that Defendant developed, manufactured, sold, and/or distributed Yakult, Defendant knew the purpose for which the product was intended and impliedly warranted that the product was of merchantable quality and was fit for its ordinary purpose – a probiotic beverage providing certain health benefits.

88.     Defendant breached its implied warranties in connection with the sale of Yakult to Plaintiff and members of the Classes.  The product was not fit for its ordinary purposes and intended use as a probiotic beverage providing certain health benefits, because Yakult does not actually provide any health benefits.

89.     Defendant had actual knowledge that Yakult does not actually provide any health benefits and Plaintiff therefore was not required to notify Defendant of its breach.  If notice is required, Plaintiff and the Classes adequately have provided Defendant of such notice through the filing of this lawsuit.

90.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and other members of the Classes have been injured.  Plaintiff and the other members of the Classes would not have purchased Yakult but for Defendant's representations and warranties.  Defendant misrepresented the character of the product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Classes.

# EIGHTH CLAIM FOR RELIEF

*Plaintiff, on Behalf of Himself and Classes in the States with Similar Laws,*
*Alleging Violation of the Consumer Fraud Laws of the Various States*

91.     Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

92.     Plaintiff brings this Count individually under the laws of the state where he purchased Yakult and on behalf of all other persons who purchased Yakult in States having similar laws regarding consumer fraud and deceptive trade practices.

93.     Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the State in which they purchased the Product.

94.     The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

95.     Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.     Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

b.     Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

c.     Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

d.     California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

1       e.     Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

2       f.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et*

3  *seq.*;

4       g.     Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et*

5  *seq.*;

6       h.     District of Columbia Consumer Protection Procedures Act, D.C. Code

7  §28 3901 *et seq.*;

8       i.       Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.

9  §501.201 *et seq.*;

10      j.      Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et*

11  *seq.*;

12      k.     Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues

13  §480-1 *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev.

14  Stat. §481A-1 *et seq.*;

15      l.       Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

16      m.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815

17  Ill. Comp. Stat. Ann. 505/1 *et seq.*;

18      n.      Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

19      o.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et*

20  *seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et*

21  *seq.*;

22      p.      Louisiana Unfair Trade Practices and Consumer Protection Law, La.

23  Rev. Stat. Ann. §51:1401 *et seq.*;

24      q.      Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*,

25  and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10,

26  §1211 *et seq.*,

27      r.       Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws

28  ch. 93A;

s.      Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.      Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.      Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.      Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.      New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.     New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.     New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.     North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.     Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.     Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

1    hh.    Rhode Island Unfair Trade Practices And Consumer Protection Act,

2  R.I. Gen. Laws §6-13.1-1 *et seq.*;

3    ii.    South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10

4  *et seq.*;

5    jj.    South Dakota's Deceptive Trade Practices and Consumer Protection

6  Law, S.D. Codified Laws §§37 24 1 *et seq.*;

7    kk.    Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et*

8  *seq.*;

9    ll.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

10    mm.    Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et*

11  *seq.*;

12    nn.    West Virginia Consumer Credit and Protection Act, West Virginia

13  Code §46A-6-101 *et seq.*; and

14    oo.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

15    96.    Yakult constitutes a product to which these consumer protection laws

16  apply.

17    97.    In the conduct of trade or commerce regarding its production,

18  marketing, and sale of the product, Defendant engaged in one or more unfair or

19  deceptive acts or practices, including, but not limited to, uniformly representing to

20  Plaintiff and each member of the Classes by means of its packaging and labeling of

21  Yakult that it is a probiotic beverage providing certain health benefits.

22    98.    Defendant's representations and omissions were false, untrue,

23  misleading, deceptive, and/or likely to deceive.

24    99.    Defendant knew, or should have known, that its representations and

25  omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

26    100.    Defendant used or employed such deceptive and unlawful acts or

27  practices with the intent that Plaintiff and members of the Classes rely thereon.

28    101.    Plaintiff and the other members of the Classes did so rely.

102.   Plaintiff and the other members of the Classes purchased the product produced by Defendant which misrepresented the characteristics and nature of the product.

103.   Plaintiff and the other members of the Classes would not have purchased the product but for Defendant's deceptive and unlawful acts.

104.   As a result of Defendant's conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

105.   Defendant's conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.   that the Court certify the nationwide Class and the California Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and his attorneys as Class Counsel to represent the members of the Classes;

B.   that the Court declare that Defendant's conduct violates the statutes referenced herein;

C.   that the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.   that the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that Yakult does not have the characteristics, uses, benefits, and quality Defendant has claimed;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

E.    that the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.    that the Court order Defendant to notify each and every individual and/or business who purchased Yakult of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

G.    that the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H.    that the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

I.    that the Court award damages to Plaintiff and the Classes;

J.    the common fund doctrine, and/or any other appropriate legal theory; and

K.    that the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action on all issues so triable.

*~signature page follows~*

DATED: January 27, 2015

Respectfully submitted,

Jared H. Beck
BECK & LEE TRIAL LAWYERS
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:   (305) 234-2060
Facsimile:   (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ, ESQ.
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:   (305) 282 3698
Facsimile:   (786) 513 7748
Hern8491@bellsouth.net

<u>Counsel for Plaintiff and the Proposed Class</u>

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL