1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SOUTHERN DIVISION**

11

12

| | |
|---|---|
| ) | **Case No.: SACV 15-00124-CJC(JCGx)** |
| **NICOLAS TORRENT, individually and** ) | |
| **on behalf of all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | **ORDER DENYING DEFENDANT'S** |
| ) | **MOTION TO DISMISS AND** |
| **v.** ) | **GRANTING IN LIMITED PART** |
| ) | **DEFENDANT'S MOTION TO STRIKE** |
| **YAKULT U.S.A., INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |

23

24

## I.  INTRODUCTION & BACKGROUND

25

26          Plaintiff Nicolas Torrent ("Plaintiff"), individually and on behalf of all others

27   similarly situated, brings this consumer protection class action against Defendant Yakult

28   U.S.A., Inc. ("Defendant"), alleging one cause of action under California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* According to the First Amended Complaint ("FAC"), Defendant manufactures and sells probiotic beverages under the name "Yakult" that contain a microorganism called "*Lactobacillus casei* Shirota." (Dkt. No. 20 [FAC] ¶ 1.) Yakult is sold in packs of five 2.7 ounce-bottles, retailing at approximately $3.60. (FAC ¶ 21.) Yakult's marketing places heavy emphasis on the health benefits of *Lactobacillus casei* Shirota. (FAC ¶ 15.) For example, the product packaging reads, in relevant part:

> Yakult is a delicious refreshing drink for everyone. Created in Japan in 1935 by our founder, microbiologist Dr. Minoru Shirota, each bottle of Yakult contains around 8 billion live and active beneficial cultures called *Lactobacillus casei* Shirota. Drink one or two bottles daily to help balance your digestive system and maintain overall health.

(FAC ¶¶ 7, 10.) Plaintiff also points to advertising on Defendant's website, which touts Yakult's ability to "make[] it difficult for the bad bacteria to take over . . . [and to] give you more of the good bacteria that may help balance your digestive system." (FAC ¶ 16.) Plaintiff further describes three separate Yakult television advertisements that describe the exclusivity of Yakult's *Lactobacillus casei* Shirota probiotic and its ability to help maintain the balance of one's digestive system and overall health. (FAC ¶¶ 17–19.) In general, Defendant's marketing and advertising are geared towards healthy people and "not to treat or cure a disease." (FAC ¶ 23.)

Despite Defendant's emphasis on Yakult's purported health benefits, consuming Yakult does not actually confer any health benefit, according to the Plaintiff. (FAC ¶¶ 23–24.) Specifically, the FAC contends that there is "no credible scientific evidence that the probiotics in Yakult can do what Defendant advertises" because, by definition, "healthy people already have a stable digestive health balance of trillions of intestinal bacteria." (FAC ¶ 24.) The FAC also cites three studies expressing doubt as to the health benefits of *Lactobacillus casei* Shirota, Yakult, and/or probiotics in general. (FAC ¶¶

25–26, 28.)  The FAC further cites a newspaper article explaining that the United Kingdom Advertising Standards Authority banned a broadcast of a Yakult television advertisement for implying there was a health advantage to drinking Yakult without using a relevant, authorized health claim.  (FAC ¶ 27.)

Plaintiff, a resident of California, alleges that he purchased Yakult multiple times, with his last purchase occurring in October 2014 at a Ralphs in Venice, California.  (FAC ¶¶ 6, 30.)  Plaintiff alleges that he relied on Yakult's false and misleading packaging and advertising claims and believed he was purchasing a product that would confer "benefits to his digestive system as well as overall health."  (FAC ¶¶ 6, 30.)  But for Defendant's misrepresentations, Plaintiff "would not have purchased Yakult, and/or would not have paid a premium for Yakult over the price of other beverages that are not promoted as improving health."  (FAC ¶¶ 30, 41.)  Plaintiff brings a UCL cause of action on behalf of himself and "[a]ll persons in the State of California who purchased Yakult from its introduction in January 1, 2007 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes."  (FAC ¶ 31.)  Before the Court are Defendant's motion to dismiss, (Dkt. No. 21 ["Def.'s MTD"]), and motion to strike, (Dkt. No. 22 ["Def.'s MTS"]).  For the following reasons, the Court DENIES Defendant's motion to dismiss and GRANTS IN LIMITED PART Defendant's motion to strike.[1]

//
//
//
//

---

[1]  Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearings set for July 20, 2015 at 1:30 p.m. is hereby vacated and off calendar.

## II.  ANALYSIS

### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A plaintiff alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.  "Therefore, under the statute, there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (internal quotation omitted).  Plaintiff's UCL claim is governed by the "reasonable consumer" test.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under this test, Plaintiff must "show that members of the public are likely to be deceived."  *Id.* (internal citations omitted).  The UCL prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal quotation omitted).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer," such that granting a motion to dismiss is appropriate only in "the rare situation."  *Williams,* 552 F.3d at 938–39.

Defendant moves to dismiss Plaintiff's UCL claim, arguing that the FAC does not plausibly allege that Defendant's representations about Yakult were false or misleading. The Court disagrees.  The FAC describes Yakult's packaging, website, and television advertisements, which focus on its creator "microbiologist Dr. Minoru Shirota," the "8 billion live and active beneficial cultures called *Lactobacillus casei* Shirota," and the probiotic's ability to help balance the digestive system, which, in turn, supports overall health.[2]  (FAC ¶¶ 10–11, 15–20.)  The FAC also makes numerous allegations as to the falsity of Defendant's claims concerning Yakult's salubrious effects.  (*See* FAC ¶¶ 23–30.)  Specifically, the FAC alleges that, despite Defendant's representations that Yakult helps to balance one's digestive system and support overall health, Yakult has no such

---

[2]  Contrary to Defendant's contentions, the Court may consider the allegations concerning Defendant's advertising, as the FAC adequately alleges Plaintiff's reliance on the advertisements.  (*See* FAC ¶¶ 6, 41.)

effect.  (FAC ¶ 24.)  In support of this claim, Plaintiff contends that, given the presence of trillions of intestinal bacteria in the human digestive system, the benefit of Yakult on digestive health is based on a "false mechanistic premise."  (FAC ¶ 24.)  The FAC further cites to various studies, including one study by the University College of London that tested Yakult on two stages: (1) whether the bacteria survived in the stomach, and (2) whether they then flourished in the gut.  The study concluded that Yakult failed both of these stages of testing.  (FAC ¶ 28.)  Accepting these allegations as true, the Court finds that Plaintiff has plausibly pled that Yakult's packaging and advertisements are likely to deceive a reasonable consumer to believe that Yakult confers health-related benefits when in fact, it does not.  Plaintiff is not required to prove the truth of his claims at the pleading stage, nor do any of the purported "contradictions" or "inconsistencies" in the FAC undermine the sufficiency of the pleading.

None of Defendant's other grounds for dismissal are availing.  Defendant's representations do not amount to non-actionable puffery.  Defendant represents that Yakult contains an "exclusive" and "unique strain of probiotic bacteria," *Lactobacillus casei* Shirota, and that the probiotic has a targeted effect in helping to "balance [one's] the digestive system."  (FAC ¶¶ 15–19.)  These are specific and detailed factual assertions that a consumer could rely on, not vague or outrageous generalizations. *Haskell v. Time, Inc.,* 857 F.Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (describing puffery as "involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers"); *cf. Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *11 (N.D. Cal. Apr. 16, 2013) (finding product name to be non-actionable puffery because "no reasonable consumer would conclude, based on the presence of the word 'essential' in the name 'Splenda Essentials,' that the Splenda

products were essential to their diet or essential in order to receive the vitamins and nutrients in the products").

The UCL claim also meets the heightened pleading requirement under Rule 9(b). The FAC makes specific allegations regarding where and how the representations regarding Yakult were made; indeed, Plaintiff provides the text and image of the product's packaging, detailed descriptions and verbatim script from the television advertisements, and website content and hyperlink.  Plaintiff also alleges that he purchased Yakult "in reliance on Defendant's false and misleading packaging and advertising claims."  (FAC ¶ 6.)  This level of detail is "sufficient to place [Defendant] on notice of the basis of [Plaintiff's] claims and demonstrates that [Plaintiff] is not on a fishing expedition."  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1234 (N.D. Cal. 2012) (finding that the plaintiffs satisfied the heightened pleading requirement of Rule 9(b) by alleging reliance on relevant commercials and describing their specific content); *see also Bronson*, 2013 WL 5731817, at *6–7 (explaining that Rule 9(b) does "not demand times and dates about when the advertisements were viewed, only basic details that would give a defendant the 'opportunity to respond to the alleged misconduct' ").

Finally, Plaintiff has sufficiently pled an injury under Article III and the UCL. Article III requires the plaintiff to suffer an injury—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or 'hypothetical' "—that can be fairly traced to the defendant's unlawful conduct and redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted).  "[A] plaintiff asserting a UCL . . . claim must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the

gravamen of the claim.' " *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1217 (C.D. Cal. 2012) (internal citation omitted) (emphasis in original).  Defendant contends that Plaintiff "does not explain how he was deprived of the benefit of his bargain with his purchase . . . [because he] makes no claim that they were tainted, spoiled, or caused any physical harm." (Def.'s MTD at 16.)  This misunderstands Plaintiff's claim.  Plaintiff was injured, not because the product was defective, but because Defendant made false representations about Yakult's salubrious effects, which induced Plaintiff to purchase a product that he otherwise would not have.  (*See* FAC ¶¶ 6, 30, 41.)  "That increment, the extra money paid, is economic injury and affords the consumer standing to sue." *Stanwood*, 941 F. Supp. 2d at 1218 (finding sufficient injury for standing where plaintiff purchased non-defective makeup products based on the defendant's alleged misrepresentation that it conducted no animal testing).  Moreover, Plaintiff has sufficiently established a causal link under Article III and the UCL because he alleges that his injuries were a result of exposure to Defendant's deceptive advertising.  *See id.* Because Plaintiff has standing to bring a UCL claim, he is entitled to seek injunctive relief.  *See Tobacco II*, 46 Cal. 4th at 312 ("[U]nder the UCL, "prevailing plaintiffs are generally limited to injunctive relief and restitution." (internal quotation omitted)).  In sum, Defendant's motion to dismiss is DENIED.

### B.  Motion to Strike

Defendant also moves to strike the class allegations in the FAC, arguing that the putative class does not meet the ascertainability requirement.  Motions to strike class allegations "are disfavored because a motion for class certification is a more appropriate vehicle" for arguments about class propriety.  *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *see also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) ("Class allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class

certification.").  While it is true that a court is not precluded from striking class allegations if "the issues are plain enough from the pleadings," *Brown*, 913 F. Supp. 2d at 888 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, (1982)), Defendant here raises several factual issues, including the pertinent date of Yakult's introduction to the U.S. market, the magnitude of Yakult's advertising campaign, and Defendant's alleged lack of records identifying consumers who have purchased Yakult in retail stores.  These factual questions are more properly resolved on a motion for class certification pursuant to Federal Rule of Civil Procedure 23, rather than on a motion to strike.  *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011).

At the same time, the Court finds that the parties have raised certain issues that are presently appropriate for adjudication.  The class is defined, in relevant part, as "[a]ll persons in the state of California who purchased Yakult from its introduction in January 1, 2007 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes."  (FAC ¶ 31.)  This definition appears to contain two ambiguities with respect to place and time.  Defendant points out, and the Court agrees, that the qualifier "in the state of California" is ambiguous.  Plaintiff states in his opposition that this phrase refers to "Yakult purchasers in California, whether or not they live in or were visiting California when they purchased Yakult in California."  (Dkt. No. 26 ["Pl.'s Omnibus Opp'n"] at 18.)  Even with Plaintiff's explanation, the Court is still unclear as to whether a putative class member must be a present California resident, must only have purchased Yakult in California, or a combination of the two.

Defendant also takes issue with January 1, 2007 as the start date for the class period.  Plaintiff's response is that the class period "will only extend back to the 4 year statute of limitations period under the UCL."  (Pl.'s Omnibus Opp'n at 18.)  By the Court's calculation, this would be closer to a January 2011 start date for the class period,

not January 2007.  Therefore, the Court GRANTS IN LIMITED PART WITH LEAVE TO AMEND Defendant's motion to strike with respect to the time and place components of the class definition.

## III.  CONCLUSION

Accordingly, Defendant's motion to dismiss is DENIED and Defendant's motion to strike is GRANTED IN LIMITED PART WITH LEAVE TO AMEND.  Plaintiff shall file a second amended complaint consistent with this Order within twenty (20) days of the date hereof.

DATED:     July 14, 2015

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE